Jeff Reich—067250
Shane Reich—222948
Paul Hager--071072
**THE REICH LAW FIRM**
8441 N. Millbrook, Suite 104
Fresno, CA 93720
—
559-440-1191

Attorneys for Plaintiff Najarian Holdings LLC

(SPACE BELOW FOR FILING STAMP ONLY)

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| Najarian Holdings LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAF Lending, LLC<br><br>　　　　Defendant. | Case No. _____<br><br>No Jury Trial Demanded |

COMPLAINT

1. Najarian Holdings LLC ("Najarian" or "Plaintiff") hereby files this Complaint seeking damages from Defendant, CAF Lending, LLC ("CAF" or "Defendant"), on claims sounding in breach of contract, breach of the covenant of good faith and fair dealing, and fraud; and for punitive damages and attorney's fees.

*PARTIES AND JURISDICTION*

Parties

2. Najarian is a Georgia limited liability company whose principal place of business is in Atlanta, Georgia.

3. CAF Lending, LLC is a Delaware limited liability company whose principal place of business

is located at 1345 Avenue of the Americas, 46th Floor, New York, NY 10105, and whose registered agent for service of process is VCorp Services CA, Inc., whose address is 1345 Avenue of the Americas, 46th Floor, New York, New York, 10105, and CT Corporation System, 818 W. 7th St, Suite 930, Los Angeles, CA 90017.

## Jurisdiction

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff is organized under the laws of the State of Georgia and maintains its principal place of business in Georgia; Defendant is organized under the laws of Delaware and maintains its principal place of business in New York; and the amount in controversy, exclusive of interest, punitive damages and attorney's fees, is in excess of $120,000.00, the minimum amount of unauthorized fees, charges and penalties paid by Najarian to CAF.

## Intradistrict Assignment

5. San Francisco is the district to which this case ought to be assigned because the parties agreed in their Revolving Loan Agreement that they executed effective October 3, 2014, that a dispute arising under that agreement (such as this dispute) would be brought in San Francisco.

## *STATEMENT OF CLAIM*

6. Najarian is in the business of purchasing residences at foreclosure sales and through private transactions in Georgia and then reselling them. In 2014, Najarian and CAF entered into a Revolving Loan Agreement dated as of October 3, 2014 (the "Loan Agreement"), and Najarian executed a Revolving Promissory Note Secured by Deeds of Trust (the "Note") as of the same date. Either at the time that Najarian acquired a property, or as soon as practicable thereafter, CAF would loan money to Najarian secured by, in each case, a security deed with respect to such property naming CAF or its designee as the secured party. As Najarian sold

each property, the portion of the outstanding loan from CAF attributable to that particular property would be paid at the closing.

### Late Fees

7. Under the terms of their loan agreements, Najarian was obligated to pay the outstanding sums due on the loan on the first day of each month. If Najarian failed to pay the charges assessed within a fifteen-day grace period, the Note provided for certain consequences. One consequence was that CAF was permitted to charge a default interest rate on the entire amount of loans that had matured or had otherwise come due in full. That default rate is defined in the Note as "a rate equal to the lesser of (a) the [non-default] Interest Rate plus twelve percent (12%), or (b) the highest rate permitted by law, computed from said due date until the date of actual repayment (the "Default Rate")." In addition, CAF was permitted to charge "a late or collection charge, as liquidated damages, equal to ten percent (10%) of the amount of such unpaid payment or deposit" that had become due. The "unpaid payment or deposit" was assessed by invoice from CAF monthly, and included both interest on all outstanding loans and entire loan balances for those loans that had matured or otherwise become due.

8. The parties continued their relationship amicably for over a year. In their normal course of business, CAF would timely render its invoice to Najarian. That practice permitted Najarian sufficient time in which to assess, challenge, validate and process payments to CAF. However, CAF changed that practice in 2016, when CAF began to send its invoices several days after the first of each month. As a consequence of CAF's new practice, the number of business days afforded Najarian to assess, challenge, validate and process payments to CAF was shortened by several days.

9. Because CAF's new practice of rendering tardy invoices foreshortened the time within which Najarian was required to process the CAF invoices, Najarian frequently made late payments. In 2016 and the first two months of 2017, Najarian paid late fees (including late fees assessed

on default interest levied on matured loans) in excess of $75,000.

### Release Fees and Release Premiums

10. The loan documents that the parties entered into (the Note, the Loan Agreement and other ancillary documents) amount to over fifty pages. They contain no mention of either a "Release Fee" or a "Release Premium." Nevertheless, CAF began demanding that Najarian pay both of these new, unauthorized charges in exchange for CAF's releases of its security interests in the properties being sold by Najarian. When Najarian challenged CAF's right to levy such fees, CAF provided no response grounded in the loan documents, but instead offered to waive some of the unauthorized charges if Najarian would agree to enter into an extension of its existing loan agreements with CAF. Najarian rejected those entreaties and instead paid the sums demanded by CAF.

11. Release premiums and release fees in excess of $50,000.00, none of which were authorized by the parties' loan agreements, were eventually paid by Najarian to CAF in order to obtain releases of CAF's security interests in Najarian's properties.

### Payoff Statements

12. CAF provided Najarian with payoff statements for those properties for which the loan was about to mature or had recently matured, as well as for properties scheduled to be sold imminently. In many instances, the payoff statement provided to Najarian materially misstated the amounts later invoiced by CAF. The payoff statements provided to Najarian showed significantly smaller amounts than the payoff statements provided to the attorneys conducting the closings.[1] Hence, Najarian would review, validate and approve the sums claimed by CAF to be owed on a property, and would later learn (on the day that a closing for a sale of a particular property occurred) that the amounts actually demanded by CAF of the closing attorneys (and paid by the closing attorneys) were substantially more than the sums

---

[1] In Georgia, attorneys rather than title companies conduct real estate closings and are, by statute, the settlement agents.

The Reich Law Firm
8441 N. Millbrook, #104
Fresno, CA 93720
559-440-1191

earlier communicated to Najarian. By engaging in this practice, CAF forced Najarian to allow payments to be made to CAF (by the closing attorneys) even though the payments appeared to Najarian to be inflated or inaccurate. Najarian was forced to consent to such payments (or learned about them only subsequently to the closings at issue) because Najarian needed to protect itself from damage to its reputation and claims from buyers who were at the closing attorney's offices, ready to close on their purchase of their new home.

## COUNT 1: BREACH OF CONTRACT

13. The foregoing paragraphs 1 through 12 are incorporated herein.

14. Najarian and CAF entered into a loan agreement. Najarian complied with all or substantially all of its obligations under the terms of the agreement. CAF engaged in actions that breached the agreement, including collecting late fees that constituted unenforceable penalties, pursuant to California Civil Code Section 1671. Indeed, some of the late fees were levied on loans *that already had matured and included* default interest charges. Plaintiff was harmed by these breaches of the parties' contract, and CAF's breaches were a substantial factor in causing harm to Najarian. Najarian seeks and is entitled to recover its damages for CAF's breach of their agreements, including all of the penalties and other fees that were either not enforceable or not authorized under the terms of the loan agreements entered into by the parties, but nevertheless assessed by Defendant, in amounts to be proved at trial.

## COUNT 2: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

15. The foregoing paragraphs 1 through 14 are incorporated herein.

16. CAF's repeated and shameless misrepresentations and conflicting representations in payoff statements, assessments of unauthorized fees, refusals to justify such fees, deliveries of its invoices late in order to induce late payments that would, in turn, lead to more late fees, and assurances that it would stop at least some of its atrocious conduct if Najarian would agree to extend the loan agreements constitute breaches by CAF of the covenant of good faith and fair dealing implied in the parties' contract. Najarian did all or substantially all that was required

of it under the loan agreement, and all of the conditions for performance by CAF of its contractual obligations had occurred. Yet, CAF unfairly interfered with Najarian's right to receive the benefits of the loan agreement and was harmed by CAF's conduct. Such acts constitute breaches of the covenant of good faith and fair dealing for which Plaintiff seeks and is entitled to recover damages equal to all default interest payments and late fees caused by CAF's acts described above, as well as all release fees and release premiums paid by Najarian to CAF.

*COUNT 3: FRAUD*

17. The foregoing paragraphs 1 through 16 are incorporated herein.

18. CAF falsely, and with the intention of deceiving Najarian, represented to Najarian that release fees and release premiums were due to CAF under the terms of the loan agreements, and would have to be paid by Najarian in order to obtain releases of CAF's liens on Najarian's properties. Employees of CAF made such representations knowing that they were false when made, or made those representations recklessly without regard for whether such statements were true or not. The CAF employees intended that Najarian employees would rely upon such representations, and Najarian's employees did reasonably rely upon those representations. Najarian was harmed thereby, and Najarian's reliance upon CAF's representations was a substantial factor in causing Najarian's harm. Najarian seeks and is entitled to an award of damages for such fraud.

*COUNT 4: PUNITIVE DAMAGES*

19. The foregoing paragraphs 1 through 18 are incorporated herein.

20. CAF's employees acted with malice, oppression or fraud. Either the conduct constituting malice, oppression or fraud was authorized by one or more officers, directors, or managing agents of CAF, or one or more officers, directors, or managing agents of CAF knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred. Najarian was harmed by that conduct and seeks and is entitled to an award of

punitive damages to punish CAF for the conduct that harmed Najarian and to discourage similar conduct in the future.

### COUNT 5: ATTORNEY'S FEES

21. The foregoing paragraphs 1 through 20 are incorporated herein.

22. Throughout the loan documents, the parties agreed that CAF would be entitled to an award of attorney's fees for pursuit of its rights under the loan documents. See Sections 6.8.4 and 10.8 of the Loan Agreement and Section 6.3 of the Note. Pursuant to California Civil Code § 1717, those contractual provisions are to be enforced to the benefit of the prevailing party, even if that party is Najarian rather than CAF. Accordingly, Najarian seeks and is entitled to an award of its attorney's fees incurred in this proceeding.

WHEREFORE, Najarian Holdings LLC prays that the Court grant the following relief:

a. Awards of damages, including actual damages for breach of contract, breach of the covenant of good faith and fair dealing, fraud, and punitive damages;

b. An award to Plaintiff its attorney's fees expended in the trial and appellate courts, and its reasonable expenses of litigation and investigation;

c. An award of costs, and

d. Such other relief as Plaintiff may show itself to be entitled.

Dated: February 3, 2020.

Respectfully submitted,

THE REICH LAW FIRM

By: *Jeff Reich*
Jeff Reich,
Attorneys for Plaintiff Najarian Holdings LLC