UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAJARIAN HOLDINGS LLC, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>COREVEST AMERICAN FINANCE LENDER LLC,<br><br>　　　　Defendant. | Case No. 20-cv-00799-PJH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

Before the court is defendant Corevest American Finance Lender LLC's[1] ("Corevest" or "defendant") motion to dismiss. The matter is fully briefed and suitable for resolution without oral argument. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court rules as follows.

## BACKGROUND

On February 3, 2020, plaintiffs Najarian Holdings LLC and Najarian Capital LLC (collectively "plaintiffs") filed a complaint alleging five causes of action. Dkt. 1. The parties stipulated to plaintiffs filing both amended complaint (Dkt. 19) and the operative Second Amended Complaint ("SAC," Dkt. 22). The SAC alleges seven causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) fraud; (4) negligent misrepresentation; (5) unfair competition; (6) punitive damages; and

---

[1] The complaint originally named CAF Lending LLC as defendant. Pursuant to a stipulation between the parties, Corevest was substituted as the named defendant as it is the successor in interest to CAF Lending LLC. See Dkt. 37.

(7) attorneys' fees. Dkt. 22. Defendant now moves to dismiss the second through seventh claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

Najarian Holdings LLC and Najarian Capital LLC are Georgia limited liability companies with their principal place of business in Atlanta, Georgia. Id. ¶ 2. The defendant at the time of the incident, CAF Lending LLC, was a Delaware limited liability company with a principal place of business in New York, New York. Id. ¶ 3. Plaintiffs are in the business of purchasing residences at foreclosure sales and then reselling those residences. Id. ¶ 6. Starting in 2014, defendant would loan money to plaintiffs either at the time of acquisition or shortly thereafter and, accordingly, the parties entered into revolving loan agreements and revolving promissory notes secured by deeds of trust, which the parties are collectively labeling as the "Loan Documents." Id.

In the normal course of business, defendant would render invoices to plaintiffs in a timely manner, which permitted plaintiffs to assess, challenge, and validate each invoice within a fifteen-day grace period permitted under the promissory notes. Id. ¶ 8. Under the terms of the Loan Documents, plaintiffs were obligated to pay outstanding sums due on the first day of each month and, after the fifteen day grace period, defendant was permitted to charge a default interest rate on the entire amount of loans that had matured or otherwise come due in full. Id. ¶ 7. The agreements also permitted defendant to collect a "late or collection charge, as liquidated damages, equal to ten percent (10%) of the amount of such unpaid payment or deposit" that had become due. Id.

The conduct at issue in the SAC arose in March 2016 when defendant allegedly changed its billing practices to send invoices after the first of each month resulting in less time for plaintiffs to assess and challenge the invoices prior to the expiration of the grace period. Id. ¶ 8. Due to defendant's practice of sending late invoices, plaintiffs frequently made payments that defendant deemed late; in 2016 and early 2017, defendant assessed, and plaintiffs paid, late fees in excess of $75,000. Id. ¶ 9. Defendant also charged plaintiffs late fees calculated as a percentage of the outstanding principal balance of loans that had matured. Id. ¶ 10. Plaintiffs characterize these late fees based

on matured amounts as illegal because they are void as a matter of public policy.  Id.

On February 1, 2017, plaintiffs' managing member, Zareh Najarian, sent an email to defendant's vice president, Stephanie Casper, complaining about $30,000 in late fees.  Id. ¶ 11.  The same day defendant's vice president responded that "the late fees cannot be waived.  As we discussed on the phone, I can offer a rebate on the new line [of credit's] advance fees, but I cannot waive [the late fees]."  Id.  On February 9, 2020, defendant's vice president sent a second email to plaintiffs:

> Zareh, When we spoke last week Wednesday I explained that there would be 5% late fee calculated on the principal balance of the matured assets to the tune of $56,000 or so, over and above the late fees charged on interest late pays (Roughly $14K in yet to be assessed via the payoff quotes).  As you will recall, we had encouraged you to execute the extension agreement in December, this would have only cost you only [sic] $11K.  The late fees, per the loan agreement, are calculated on any past due amounts, interest and/or principal.

Id. ¶ 12 (alteration in original).  The vice president sent a third email a few weeks later stating "We will do an extension for .5% for 30 days on the 4 assets.  This will prevent you from having to pay 5% on the principal and interest saving you over $20,000!!"  Id. ¶ 13.  Plaintiffs characterize these emails from defendant as an attempt to coerce plaintiffs into paying illegal fees with a promise to rebate some of the late fees if plaintiffs agreed to sign a new line of credit agreement.  Id. ¶ 11.

Separately from the foregoing conduct, plaintiffs allege that defendant demanded that plaintiffs pay a $250 release fee in exchange for defendant's releases of its security interests in properties sold by plaintiffs.  Id. ¶ 15.  These release fees are not mentioned in the Loan Documents.  Id.  Plaintiffs also allege that defendant provided them with payoff statements for properties for which the loan was about to mature or had recently matured.  Id. ¶ 22.  Plaintiffs allege that the payoff statements materially misstated the amounts later invoiced by defendant such that defendant would end up charging amounts substantially more than the sums earlier communicated to plaintiffs.  Id.

/ / /

/ / /

**DISCUSSION**

**A.     Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock Inc., 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999), superseded by statute on

other grounds as stated in In re Quality Sys., Inc. Sec. Litig., 865 F.3d 1130 (9th Cir. 2017)); see also Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("[A] court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document." (citation omitted)). The court may also consider matters that are properly the subject of judicial notice (Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001)), and exhibits attached to the complaint (Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989)).

For plaintiffs' claims that sound in fraud, the complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. "To satisfy Rule 9(b)'s particularity requirement, the complaint must include an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Depot, Inc. v. Caring for Montanans, Inc., 915 F.3d 643, 668 (9th Cir. 2019) (internal quotation marks omitted). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Kearns, 567 F.3d at 1124. Plaintiffs must also offer "an explanation as to why the statement or omission complained of was false or misleading." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superseded by statute on other grounds as stated in SEC v. Todd, 642 F.3d 1207, 1216 (9th Cir. 2011).

**B.   Analysis**

    **1.   Second Claim: Breach of Covenant of Good Faith and Fair Dealing**

Plaintiffs' second claim is for the breach of the implied covenant of good faith and fair dealing. Every contract "imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 798 (Ct. App. 2008). To establish a breach of an implied covenant of

1  good faith and fair dealing, a plaintiff must establish the existence of a contractual
2  obligation, along with conduct that frustrates the other party's rights to benefit from the
3  contract.  See Racine & Laramie v. Dep't of Parks & Rec., 11 Cal. App. 4th 1026, 1031
4  (Ct. App. 1992); see also Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 349–50 (2000)
5  (stating that the covenant of good faith and fair dealing cannot "be endowed with an
6  existence independent of its contractual underpinnings," and thus "cannot impose
7  substantive duties or limits on the contracting parties beyond those incorporated in the
8  specific terms of their agreement" (citations omitted)); Smith v. City and Cty. of San
9  Francisco, 225 Cal. App. 3d 38, 49 (Ct. App. 1990) ("Without a contractual relationship, [a
10 plaintiff] cannot state a cause of action for breach of the implied covenant.").

11       Defendant argues that plaintiffs have not pleaded a special relationship between
12 them and defendant, which is required to recover in tort for a breach of the implied
13 covenant of good faith and fair dealing.  Mtn. at 13.  Instead, defendant contends this
14 case is an ordinary commercial contract that does not give rise to the special relationship
15 needed to sustain an implied covenant claim.  Id. at 14.  Defendant also contends that
16 plaintiffs' allegations confirm that their implied covenant claim is duplicative of their
17 breach of contract claim.  Id. at 15.  In response, plaintiffs argue that they do not need to
18 allege or prove a special relationship to state a claim for breach of the implied covenant
19 of good faith and fair dealing.  Opp. at 13.  Plaintiffs also argue that the implied covenant
20 claim cannot be dismissed at this stage because defendant has not pleaded a response
21 to plaintiffs' breach of contract claim.  Id. at 14.

22       At the outset, the court notes that plaintiffs have not specified whether they allege
23 their second claim as a breach of an implied contract, sounding in contract, or as a
24 tortious breach of the implied covenant.  For example, in their opposition brief, plaintiffs
25 argue that the special relationship test is not a necessary allegation where "the duty that
26 gives rise to tort liability is either completely independent of the contract or arises from
27 conduct which is both intentional and intended to harm."  Opp. at 13 (quoting Bales v.
28 FCA US LLC, No. C 19-04798 WHA, 2019 WL 6219750, at *5 (N.D. Cal. Nov. 21, 2019)).

The reference to Bales and tort liability suggests that plaintiffs seek to recover in tort for breach of the implied covenant of good faith and fair dealing.

As a general rule, "[b]ecause the [implied] covenant is a contract term . . . compensation for its breach has almost always been limited to contract rather than tort remedies." Foley v. Interactive Data Corp., 47 Cal. 3d 654, 684 (1988). "Generally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a special relationship with fiduciary characteristics." Pension Tr. Fund v. Fed. Ins. Co., 307 F.3d 944, 955 (9th Cir. 2002); see also Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395 (Ct. App. 1990) ("A review of those cases demonstrates that the existence of this remedy has been justified by the "special relationship" existing between insurer and insured, which is characterized by elements of public interest, adhesion and fiduciary responsibility."). "[T]he implied covenant tort is not available to parties of an ordinary commercial transaction where the parties deal at arms' length." Pension Tr. Fund, 307 F.3d at 955. "California courts do not invoke a special relationship between a lender and borrower." Kroetch v. BAC Home Loan Servs., No. C 11-2860 MEJ, 2011 WL 4502350, at *4 (N.D. Cal. Sept. 27, 2011) (citing Kim v. Sumitomo Bank, 17 Cal. App. 4th 974, 979 (Ct. App. 1993) ("[T]he relationship of a bank-commercial borrower does not constitute a special relationship for the purposes of the covenant of good faith and fair dealing."); and Mitsui Mfrs. Bank v. Superior Court, 212 Cal. App. 3d 726 (Ct. App. 1989)). An exception to this general rule may exist if "the financial dependence or personal security by the damaged party has been entrusted to the other" or "when [the lender] excessively controls or dominates the borrower." Pension Tr. Fund, 307 F.3d at 955 (citations omitted).

The foregoing cases demonstrate that if plaintiffs intended to plead their second claim as a tortious breach of the implied covenant, then they have not alleged sufficient facts that they are in a special relationship with fiduciary characteristics or that they meet a relevant exception to the special relationship, such as that defendant excessively controlled or dominated plaintiffs within the bank-commercial borrower relationship. As

currently alleged, the SAC does not suggest the relationship between the parties was anything other than arm's length transactions between a bank and commercial borrower. Notably, the parties entered into a contractual relationship and performed under the terms of those agreements for over a year without alleging any malfeasance. SAC ¶ 8. When the issue of late fees first arose, plaintiffs paid late fees totaling $75,000 in 2016 without registering any complaint with defendant. Id. ¶ 9. When plaintiffs did complain in February 2017 concerning $30,000 in late fees, defendant's vice president responded that the late fees would not be waived. Id. ¶ 11. The remaining communications from defendant indicate a summary of a past offer for a renewed line of credit and a renewal of that offer. As alleged, the facts plausibly suggest a disagreement about the amount owed and whether the late fees should be waived or charged but does not plausibly rise to the level of excessive control or domination.

If, however, plaintiffs intended to plead their second claim as a breach of the implied covenant of good faith and fair dealing sounding in contract, then they would not need to allege facts supporting a special relationship between the parties. See Careau & Co., 222 Cal. App. 3d at 1392 ("Although plaintiffs have characterized this count as the tortious breach of the implied covenant, it is obviously possible to state a cause of action for a breach of such covenant even though no basis for a tort recovery exists."). "Notably, although the California Supreme Court has held that a plaintiff may bring both a breach of contract claim and a claim for breach of the implied covenant of good faith and fair dealing, the Supreme Court has made clear that when both causes of action cite the same underlying breach, the implied covenant cause of action will be superfluous with the contract cause of action." Landucci v. State Farm Ins. Co., 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (citing Guz, 24 Cal. 4th at 327 ("[W]here breach of an actual term is alleged, a separate implied covenant claim, based on the same breach is superfluous.")). "In other words, a claim alleging breach of the implied covenant of good faith and fair dealing cannot be 'based on the same breach as the contract claim,' or else it will be dismissed." Id. (quotation marks omitted) (quoting Daly v. United Healthcare Ins. Co.,

8

1  10–CV–03032 LHK, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010)).

Here, plaintiffs bring a breach of contract claim alleging that defendant breached the agreements between the parties by charging and collecting late fees that were void and unenforceable under California law. SAC ¶ 24. They also allege that defendant charged and collected release fees that were not authorized by the contracts. Id. ¶ 25. Much of that conduct and the corresponding relief is duplicated in plaintiffs' implied covenant claim. Their implied covenant claim alleges that defendant engaged in conduct such as misrepresentations in payoff statements, assessments of unauthorized fees, misrepresentations that deceived plaintiffs into thinking that certain fees were authorized by the agreement, delivery of late invoices, and assurances that defendant would waive its fees if plaintiffs agreed to extend and renew the loan agreements. Id. ¶ 28. To the extent that the implied covenant claim seeks to recover the same late fees and release fees as are sought under plaintiffs' breach of contract claim, the implied covenant claim is superfluous of the breach of contract claim and cannot state a claim.

However, at least some of the conduct alleged is not superfluous. Specifically, plaintiffs allege that defendant materially misstated amounts owed on payoff statements and defendant later demanded greater sums than on the payoff statements. Id. ¶ 22. Plaintiffs felt obligated to pay those statements in order to protect themselves from buyers who sought to close on the homes which were subjects of the payoff statements. Id. A claim for breach of the implied covenant of good faith and fair dealing requires the existence of a contract and some conduct by defendant that frustrated plaintiffs' right to benefit under the contract. The parties do not dispute the existence of a contract and the misstated payoff statements plausibly frustrated plaintiffs' right to benefit under the contract. It may be the case that the allegations concerning payoff statements are ultimately subsumed into resolution of an express contract term, but at this stage, plaintiffs have plausibly stated a claim.

To the extent that plaintiffs' second claim alleges conduct superfluous of the breach of contract claim, it is DISMISSED WITH PREJUDICE as no amendment can

9

cure the deficiency. However, defendant's motion is DENIED to the extent plaintiffs' claim alleges conduct relating to payoff statements.

### 2. Third & Fourth Claims: Fraud & Negligent Misrepresentation

Plaintiffs' third claim is for fraud and their fourth claim is for negligent misrepresentation. "The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" Kearns, 567 F.3d at 1126 (quoting Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 974 (1997)). The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (Ct. App. 2007). "In contrast to fraud, negligent misrepresentation does not require knowledge of falsity." Id. Instead, "[a] person who makes false statements, honestly believing that they are true, may still be liable for negligent misrepresentation if he or she has no reasonable grounds for such belief." Id. (internal quotations omitted).

#### a. Economic Loss Rule

Defendant argues that the economic loss rules bars plaintiffs' fraud and negligent misrepresentation claims. Mtn. at 6. According to defendant, plaintiffs have not alleged any fraudulent conduct independent of their breach of contract claim. Id. Plaintiffs argue that this case is analogous to the California Supreme Court's decision in Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979 (2004), which permitted a tort claim based on conduct independent of the breach of contract claim. Opp. at 7–8. According to plaintiffs, defendant's representative falsely represented that the late fees were legal and authorized by the parties' contracts. Id. at 8.

As a general rule, "courts will generally enforce the breach of a contractual

promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." Robinson Helicopter, 34 Cal. 4th at 991–92 (quoting Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 107 (1995) (Mosk, J., concurring in part)).  The economic loss rule "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." Id. at 988. "Economic loss consists of damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property." Id. (citing Jimenez v. Superior Court, 29 Cal. 4th 473, 482 (2002)).  The purpose of the economic loss rule is to "prevent the law of contract and the law of tort from dissolving one into the other." Id.

In Robinson Helicopter, the California Supreme Court considered a post-trial challenge to a jury's punitive damages award that was premised upon its finding that a defendant-supplier "not only breached its contract . . . but also had made false misrepresentations of fact and had knowingly misrepresented or concealed material facts with the intent to defraud." Id. at 987.  In part, those misrepresentations were based on the defendant's false certificates representing to the plaintiff-helicopter manufacturer that the clutch components provided conformed to the parties' previously agreed to specifications. Id. at 990.  Once mechanical issues with the plaintiff's helicopters began to arise, regulatory authorities required the plaintiff to recall and replace the faulty clutches. Id. at 987.  To comply, the plaintiff paid over $1.5 million for replacement parts and labor to identify and resolve those issues. Id. at 987

The court in Robinson Helicopter concluded that "the economic loss rule does not bar [plaintiff's] fraud and intentional misrepresentation claims because they were independent of [defendant's] breach of contract." Id. at 991.  The provision of false certificates was independent of the breach of contract.  Significantly, the court characterized its holding as "limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages

11

independent of the plaintiff's economic loss." Id. at 993.

Here, the same conduct that supports plaintiffs' breach of contract claim also underpins their fraud and negligent misrepresentation claims. The breach of contract claim alleges that defendant charged and collected late fees that were void and unenforceable penalties under California Civil Code § 1671. SAC ¶ 24. The breach of contract claim also alleges that defendant charged and collected release fees that were not authorized by the Loan Documents. Id. ¶ 25. Plaintiffs' fraud claim alleges that defendant falsely represented to plaintiffs that release fees and late fees on outstanding balances were due to defendant and would have to be paid by plaintiffs in order to obtain releases of defendant's liens on plaintiffs' properties. Id. ¶ 30. The claim for negligent misrepresentation follows a similar track. See id. ¶ 32. The only damages identified by plaintiffs are fees, charges, and penalties paid by Najarian Holdings and Najarian Capital—at least $120,000 and $90,000 respectively—to defendant. Id. ¶ 4. These losses are economic losses and plaintiffs cannot state a claim for their recovery unless they can allege a violation of a duty independent of the contract arising from principles of tort law.

They have not done so. In their opposition, plaintiffs argue that the SAC alleges an independent tort based on facts analogous to those in Robinson Helicopter. Opp. at 7. The exception discussed by the California Supreme Court in Robinson Helicopter does not apply here for at least two reasons.[2] First, as discussed, the conduct alleged in plaintiffs' third and fourth claims directly relate to the same conduct supporting the breach of contract claim—the dispute over whether plaintiffs should have paid late fees and release fees. Second, plaintiffs do not allege that they have been exposed to liability for

---

[2] Several district courts have questioned whether Robinson Helicopter's analysis extends beyond products liability cases, upon which the Robinson Helicopter court relied. See Westport Ins. Corp. v. Vasquez, Estrada & Conway LLP, No. 15-CV-05789-JST, 2016 WL 1394360, at *6 (N.D. Cal. Apr. 8, 2016) (collecting cases); United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp., 660 F. Supp. 2d 1163, 1183 (C.D. Cal. 2009). Because plaintiffs do not meet the exception detailed in Robinson Helicopter, the court need not delve into whether the exception applies at all.

"personal damages independent of the plaintiff's economic loss." Robinson Helicopter, 34 Cal. 4th at 993; see also Crystal Springs Upland Sch. v. Fieldturf USA, Inc., 219 F. Supp. 3d 962, 970 (N.D. Cal. 2016) ("[A] negligent misrepresentation claim paralleling a contract claim that prays only for economic damages will be barred by the economic loss rule unless the plaintiff alleges both that the defendant made an affirmative misrepresentation, and that the defendant's misrepresentation exposed the plaintiff to independent personal liability.").

The foregoing discussion demonstrate why this is a straightforward application of the economic loss rule. The following summary from a district court describes the issue: "Put simply, [plaintiffs have] taken the allegations underpinning a straightforward claim for breach of a commercial contract and recast them as torts. The tort claims consist of nothing more than [defendant's] alleged failure to make good on its contractual promises." JMP Sec. LLP v. Altair Nanotechnologies Inc., 880 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012).

Application of the economic loss rule serves as a sufficient basis to conclude that plaintiffs cannot state a claim for fraud, as currently alleged. However, district courts in the Ninth Circuit are split over whether the economic loss rule bars a negligent misrepresentation claim. See Broomfield v. Craft Brew All., Inc., No. 17-CV-01027-BLF, 2017 WL 3838453, at *9 (N.D. Cal. Sept. 1, 2017) (discussing split). Part of the confusion stems from an unpublished Ninth Circuit opinion holding, without any discussion of the case, that Robinson Helicopter permits economic losses for a negligent representation claim. See Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc., 315 Fed. App'x 603, 607 (9th Cir. 2008). This court need not resolve the split over negligent misrepresentation because plaintiffs' fraud and negligent misrepresentation claims fail for at least one further reason.

### b. Rule 9(b) Heightened Pleading Requirement

As stated, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Kearns, 567 F.3d at 1124. Plaintiffs must

also offer "an explanation as to why the statement or omission complained of was false or misleading." In re GlenFed, Inc. Sec. Litig., 42 F.3d at 1548.

Defendant argues that plaintiffs have only identified three email statements from defendant's vice president, Stephanie Casper, in which she made specific factual representations. See SAC ¶¶ 11–13. According to defendant, the SAC contains no explanation or factual information as to whether or why any of these specific representations were false or misleading. Mtn. at 11–12. Plaintiffs argue that the statements were intended to mollify and mislead plaintiffs so they would continue to pay late fees and not contest payment of past late fees. Opp. at 12. Plaintiffs also indicate that they could address any failure to adequately allege false or misleading statements in an amended complaint. Id. at 12–13.

As currently alleged, the SAC fails Rule 9(b)'s heightened pleading requirement. Plaintiffs have satisfied the specificity requirement by identifying a person and specific alleged statements made by that person. What is lacking is any corresponding allegation supporting why the statements were false or misleading. Casper's email includes affirmative statements that defendant would not waive the late fees. SAC ¶ 11 ("I can offer a rebate on the new line's advance fees, but I cannot waive them . . ."). There are also statements amounting to an explanation as to the amount of fees if plaintiffs had accepted a previously offered extension on a loan agreement. Id. ¶ 12 ("As you will recall, we had encouraged you to execute the extension agreement in December, this would have only cost you only [sic] $11K."). Finally, there is a renewed offer for an extension on the agreement. Id. ¶ 13 ("We will do an extension for .5% for 30 days on the 4 assets.").

Those statements appear to be no different than business negotiations concerning late fees and renegotiation of an agreement. Moreover, the allegations of fraud and misrepresentation rely on a presumption on the part of plaintiffs that the late fees in question are illegal under California Civil Code § 1671 and, further, that defendant knew or should have known that the fees were illegal. This presumption is problematic, at least

14

1   as currently alleged.  Plaintiffs' conclusion that the late fees assessed under the Loan
2   Agreements are illegal is a legal conclusion, i.e., the fees are illegal under section 1671.
3   There is no factual allegation that defendant shared their view that the late fees were in
4   fact illegal and defendant charged them anyway.  Nor is it clear that defendant should
5   have known the fees were illegal.  Whether a liquidated damages clause is unreasonable
6   and unenforceable under section 1671(b) requires an inquiry into whether "it bears no
7   reasonable relationship to the range of actual damages that the parties could have
8   anticipated would flow from a breach."  Greentree Fin. Grp., Inc. v. Execute Sports, Inc.,
9   163 Cal. App. 4th 495, 499 (Ct. App. 2008) (quoting Ridgley v. Topa Thrift & Loan Ass'n,
10  17 Cal. 4th 970, 977(1998)).  This is not to say that the liquidated damages clause in
11  question was enforceable; plaintiffs may well prevail on that legal issue as this litigation
12  progresses.  The point here is that reasonable minds can disagree whether a liquidated
13  damages clause is enforceable.  Thus, it is difficult to subscribe fraud or negligent
14  misrepresentation to one party concerning this disagreement absent specific factual
15  allegations to the contrary, as required by Rule 9(b).  The court does not discount that
16  such allegations could be pled by plaintiffs, but they have not done so in the SAC.
17        For the foregoing reasons, plaintiffs' third claim for fraud and fourth claim for
18  negligent misrepresentation are DISMISSED WITH LEAVE TO AMEND.

19        **3.**    **Fifth Claim: Unfair Competition**

20        Plaintiffs' fifth cause of action is for a violation of California's unfair competition law
21  ("UCL").  The UCL creates a cause of action for business practices that are (1) unlawful,
22  (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200.  Each "prong of the UCL
23  [provides] a separate and distinct theory of liability."  Lozano v. AT & T Wireless Servs.,
24  Inc., 504 F.3d 718, 731 (9th Cir. 2007); see also Imax Corp. v. Cinema Techs., Inc., 152
25  F.3d 1161, 1169 (9th Cir. 1998) (discussing common law unfair competition).
26        Defendant argues that plaintiffs cannot meet any of the three prongs.  With regard
27  to the unlawful prong, defendant contends that plaintiffs cannot state a claim under the
28  unlawful prong because they are alleging only common law violations.  Mtn. at 16.

15

1  Plaintiffs respond that their breach of contract claim is premised on defendant's violation
2  of Civil Code § 1671.  Opp. at 16.  With respect to the unfair prong, defendant asserts
3  that plaintiffs have not alleged a violation of antitrust law or that the claims are tethered to
4  an underlying constitutional, statutory, or regulatory provision.  Mtn. at 16.  Plaintiffs
5  respond that there are several tests articulated by California courts that may be
6  applicable and because defendant does not address those tests, they are unable to
7  respond effectively.  Opp. at 17.  They also argue that asserting a contractual right that
8  one does not have may constitute an unfair business practice.  Id. at 18.  Finally, as to
9  the fraud prong, defendant argues plaintiffs have failed to plead fraud with particularity.
10  Mtn. at 16.  Plaintiffs argue that the fraud prong only requires a showing that a plaintiff
11  was likely to be deceived and suffered economic injury as a result of the deception.  Opp.
12  at 19–20.

13  In a case cited by defendant, Shroyer v. New Cingular Wireless Services, Inc., the
14  Ninth Circuit noted that a violation of the unlawful prong of § 17200 requires plaintiffs to
15  allege that they were "engaged in a business practice 'forbidden by law, be it civil or
16  criminal, federal, state, or municipal, statutory, regulatory, or court-made.'"  622 F.3d
17  1035, 1044 (9th Cir. 2010) (quoting Saunders v. Superior Court, 27 Cal. App. 4th 832,
18  838–39 (Ct. App. 1994)).  The court stated, "a common law violation such as breach of
19  contract is insufficient."  Id.  In making that statement, the court cited National Rural
20  Telecommunications Co-op. v. DIRECTV, Inc., which in turn noted that a breach of
21  contract may form the predicate for a section 17200 claim, "provided it also constitutes
22  conduct that is 'unlawful, or unfair, or fraudulent.'"  319 F. Supp. 2d 1059, 1074–75 (C.D.
23  Cal. 2003) (quoting Watson Labs. Inc. v. Rhone–Poulenc Rorer, Inc., 178 F. Supp. 2d
24  1099, 1117 n.12 (C.D. Cal. 2001)).

25  Applying here, plaintiffs allege defendant violated a statutory provision, California
26  Civil Code § 1671, and because of that violation, breached the contract.  SAC ¶ 24.  The
27  statutory violation is a necessary predicate to the common law breach of contract claim
28  and, therefore, constitutes conduct that is forbidden by law.  Plaintiffs can plausibly state

16

a claim for breach of the unlawful provision of § 17200.[3]

That conclusion does not resolve plaintiffs' claim, however, because they seek damages under section 17200. Id. ¶ 35. "The UCL limits the remedies available for UCL violations to restitution and injunctive relief . . . ." Madrid v. Perot Sys. Corp., 130 Cal. App. 4th 440, 452 (Ct. App. 2005). In their opposition, plaintiffs concede that they cannot seek damages under the UCL and seek the opportunity to replead their complaint for restitution rather than damages. Opp. at 21. The court agrees that plaintiffs cannot seek damages under the UCL and plaintiffs' fifth cause of action fails to state a claim for that reason.

Plaintiffs indicate that they intend to replead their complaint seeking restitution rather than damages. That assertion merits further discussion.

> Restitution under [Business and Professions Code] section 17203 is confined to restoration of any interest in money or property, real or personal, which may have been acquired by means of such unfair competition. A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other. [C]ompensatory damages are not recoverable as restitution.

Zhang v. Superior Court, 57 Cal. 4th 364, 371 (2013) (alterations in original) (internal quotation marks and citations omitted). As the foregoing passage demonstrates, plaintiffs will need to allege specific money or property that defendant acquired from plaintiffs in order to seek restitution. Broadly speaking, the SAC alleges that plaintiffs paid to defendant certain fees and penalties pursuant to contracts entered into by the parties. Generally, the UCL "is not an all-purpose substitute for a tort or contract action." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1150 (2003) (quoting Cortez v. Purolater Air Filtration Prods. Co., 23 Cal. 4th 163, 173 (2000)). It may be the case that plaintiffs can sufficiently allege conduct warranting application of the equitable

---

[3] The court does not foreclose the fact that plaintiffs may also state a claim under the other prongs of the UCL. Because plaintiffs simultaneously state a claim under the unlawful prong and fail to seek proper relief under the UCL, the court need not address the unfair or fraudulent prongs.

17

remedies provided for by the UCL, but as currently alleged, this appears to be a contract action for which compensatory damages are the appropriate relief (should plaintiffs prevail on their breach of contract claim).

For the foregoing reasons, plaintiffs' fifth claim for unfair competition is DISMISSED WITH LEAVE TO AMEND.

### 4. Sixth and Seventh Claims: Punitive Damages and Attorneys' Fees

Plaintiffs' sixth and seventh claims are for punitive damages and attorneys' fees. Defendant contends that neither punitive damages nor attorneys' fees are causes of action (Mtn. at 17) and plaintiffs concede that their claims can be recharacterized as remedies (Opp. at 22). As defendant points out, both punitive damages and attorneys' fees are not causes of action, rather they are remedies. See Locuspoint Networks, LLC v. D.T.V. LLC, No. 14-CV-01278-JSC, 2015 WL 2398168, at *6 (N.D. Cal. May 19, 2015); Oppenheimer v. Sw. Airlines Co., No. 13-CV-260-IEG BGS, 2013 WL 3149483, at *3 (S.D. Cal. June 17, 2013). Plaintiffs have already included both punitive damages and attorneys' fees in their prayer for relief and may continue to pursue these to the extent they are supported by plaintiffs' underlying claims.

For the foregoing reasons, plaintiffs' sixth and seventh claims are DISMISSED WITH PREJUDICE.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiffs' second cause of action for breach of the covenant of good faith and fair dealing is GRANTED IN PART AND DENIED IN PART, and, to the extent it is granted, the claim is DISMISSED WITH PREJUDICE as discussed herein; defendant's motion to dismiss plaintiffs' third cause of action for fraud is GRANTED, and the claim is DISMISSED WITH LEAVE TO AMEND; defendant's motion to dismiss plaintiffs' fourth cause of action for negligent misrepresentation is GRANTED, and the claim is DISMISSED WITH LEAVE TO AMEND; defendant's motion to dismiss plaintiffs' fifth cause of action for unfair competition is GRANTED, and the claim is DISMISSED WITH LEAVE TO AMEND; defendant's motion

to dismiss plaintiffs' sixth cause of action for punitive damages is GRANTED, and the claim is DISMISSED WITH PREJUDICE; and defendant's motion to dismiss plaintiffs' seventh cause of action for attorneys' fees is GRANTED, and the claim is DISMISSED WITH PREJUDICE.

The court notes that, pursuant to stipulations between the parties, plaintiffs have already had two opportunities to amend their complaint. Given the failure to adequately state a claim after two such opportunities, the court is skeptical that plaintiffs can state a claim for those causes of action dismissed with leave to amend. However, because this is the first instance the court has reviewed the complaint, it is not clear that further amendment is futile. Accordingly, plaintiffs may file an amended complaint, if any, within 21 days of the date of this order. No new parties or causes of action may be pleaded without leave of court or the agreement of defendant.

**IT IS SO ORDERED.**

Dated: July 9, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge